UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

OLAIJAIDE CHAPMAN,

                              Plaintiff,

-against-                                                1:23-CV-686 (LEK/PJE)

CITY OF ALBANY, *et al.*,

                              Defendants.

## **MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      On May 23, 2023, Plaintiff Olaijaide Chapman commenced this civil rights action by filing a complaint in New York state court asserting claims against Defendants City of Albany, County of Albany, County of Albany Police Department, Timothy Haggerty, Lawrence Heid, Christopher Cornell, Shannon Corbitt, Albany County District Attorney's Office John/Jane Does #1–5, and Albany County Police Department John/Jane Does #6–10. Dkt. No. 2 ("Complaint"). The action was then removed to this Court. Dkt. No. 1. On June 12, 2024, Defendants County of Albany, Corbitt, and John/Jane Does #1–5 (hereinafter "County Defendants") moved for judgment on the pleadings. Dkt. No. 40-1 ("County Motion"). Separately, Defendants City of Albany, Cornell, Haggerty, and Heid moved for judgment on the pleadings. Dkt. No. 42-1 ("City Motion"). Plaintiff filed one response for both motions. Dkt. No. 50 ("Response"). Defendants filed replies in support of their respective motions. Dkt. Nos. 51, 52.

      For the reasons that follow, the County Motion and the City Motion are granted in part and denied in part.

## II. BACKGROUND

The following facts are set forth as alleged in the Complaint. In doing so, the Court only includes those facts relevant to the instant motions.

Plaintiff is a resident of Albany, New York. Compl. ¶ 7. On or around April 17, 2014, "a shooting of Marquis Mitchell occurred in Albany County." *Id*. ¶ 18. Defendants Haggerty, Heid, and Cornell were the lead detectives in the investigation. *Id.* ¶ 13–15. Following the incident, "[t]he named officers and detectives improperly influenced and intimidated witnesses" to identify Plaintiff as the "'leader' of the murder plot." *Id.* ¶ 35. On or about April 28, 2014, "police conducted an 11-hour video recorded interview" of one witness and a "14-hour interview" of another. *Id.* ¶ 19. "[D]uring these exhaustive interviews," both witnesses "implicated Plaintiff as the one who 'solicited' them to shoot" Mitchell. *Id.* One witness admitted that "the majority" of his "11-hour interrogation was completely fabricated." *Id.* ¶ 34. Months later, that witness "decided to cooperate with the prosecution in exchange for a promised sentence." *Id.* The other witness "also admitted that he was not truthful with the police during his initial questioning" and said he did not implicate Plaintiff during the initial questioning. *Id.* Both witnesses "were eventually promised lesser sentences to identify [Plaintiff] as the lead conspirator of the murder." *Id.* ¶ 32.

"None of the forensic evidence" tied Plaintiff "to this alleged conspiracy." *Id.* ¶ 37. Nevertheless, Defendants "manipulated conversations and evidence, including Plaintiff's [T]witter account and phone records to make it appear that Plaintiff was involved" in the crime *Id.* ¶ 38. Plaintiff was interrogated, during which "Haggerty and Heid labored" to "elicit out of context verbal responses, initiate a dialogue, pose accusatory questions, and repeatedly reference out of context quotes and re-tweets from Plaintiff's Twitter account." *Id.* ¶ 39. Defendants

continued "to manipulate Plaintiff by asking to hear his voice, by threatening him that people close to him are getting locked up, by claiming to be [Plaintiff's] Twitter follower and continuously badgering [Plaintiff] that he was not only in a gang, but a high-ranking member." *Id.*

On April 8, 2015, Plaintiff was indicted in Albany County Court. *Id.* ¶¶ 26, 33. Plaintiff was then arrested on or about April 14, 2015. *Id.* ¶ 20. Defendant Corbitt "was the Assistant District Attorney who was assigned to prosecute Plaintiff." *Id.* ¶ 12. Before trial, Plaintiff's defense counsel moved to exclude "a videotape of [Plaintiff's] interrogation conducted the night he was arrested." *Id.* ¶ 41. The trial court granted the exclusion on the grounds that "the prejudicial impact of the videotaped interview far outweighs its probative value." *Id.* On March 22, 2016, Corbitt "moved for reconsideration" of this order, which the trial court denied. *Id.* ¶¶ 43, 45. On May 12, 2016, Corbitt attempted again to reverse the exclusion order. *Id.* ¶ 46. "Having previously failed to obtain a reversal with truthful representations, . . . [Corbitt] lied to the [c]ourt." *Id.* Specifically, Corbitt told the court that she wanted to admit the video because of "the specific verbal response [Plaintiff gave]." *Id.* (quoting Corbitt's in-court statement). However, Plaintiff "said nothing of substance during the interrogation." *Id.* ¶ 47.

As a result of Corbitt's misrepresentations, "the trial court reversed its exclusion ruling and allowed the video to be played for the jury and used in summation." *Id.* ¶ 50. At trial, Corbitt "introduced and used the video to show . . . Plaintiff's silence." *Id.* ¶ 49. Corbitt portrayed Plaintiff as a "high-ranking member" of a gang, "despite Plaintiff remaining silent and offering no inculpatory statements." *Id.* ¶ 39. Corbitt "commented on select portions of the videotaped statements, expressly posing questions to the jury such as[,] 'is that what we would expect to see from an innocent person?'" *Id.* ¶ 54. On May 27, 2016, Plaintiff was "convicted of one count of

Attempted Murder in the First Degree, one count of Attempted Murder in the Second Degree, two counts of Assault in the First Degree, and two counts of Conspiracy in the Second Degree." *Id.* ¶ 24. Plaintiff "was convicted on the basis of the State's improper introduction" of the video. *Id.* ¶ 40.

On April 23, 2020, the New York Appellate Division "reversed Plaintiff's conviction and remitted the matter to the Albany County Court." *Id.* ¶ 27. "The Appellate Division reversed [Plaintiff's] conviction, in part, based on the introduction and presentation" of the video to the jury. *Id.* ¶ 51. Indeed, "[t]he Appellate Division held that 'County Court erred in allowing the redacted video to be shown to the jury.'" *Id.* ¶ 53 (quoting *People v. Chapman*, 123 N.Y.S.3d 236, 240 (N.Y. App. Div. 2020)). In arriving at its conclusion, the Appellate Division found that "it is certainly possible that the jury would have acquitted [Plaintiff] had it not viewed the video." *Id.* (quoting *Chapman*, 123 N.Y.S.3d at 240). "Crucially, the Appellate Division was not presented with evidence of the prosecutor's fraud on the trial court." *Id.* ¶ 60. "Plaintiff was not released from State prison until July 2020, . . . and was required to wear an ankle monitor." *Id.* ¶ 27. On March 23, 2021, "nearly five years after Plaintiff was sentenced, . . . the [i]ndictment and all charges against him were dismissed in their entirety, [and] the ankle monitor was removed." *Id.* ¶ 28.

In the Complaint, Plaintiff asserts three claims under 42 U.S.C. §1983: one malicious prosecution claim, one deprivation of the constitutional right to a fair trial claim, and one deprivation of due process claim. *Id.* ¶¶ 72–102. Additionally, Plaintiff asserts one claim under Article I of the New York State Constitution, a failure to intervene claim, and an intentional infliction of emotional distress claim. *Id.* ¶¶ 103–127. Plaintiff seeks monetary damages for his injuries. *Id.* at 4.

4

### III. LEGAL STANDARD

The standard of review for a motion for judgment on the pleadings and that of a motion to dismiss are indistinguishable. *LaFaro v. N.Y. Cardiothoracic Grp. PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Therefore, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must draw all inferences in favor of the plaintiff. *Id.* (citing *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleading facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *See id.* at 678–79.

### IV. DISCUSSION

Defendants support their motions for judgment on the pleadings with several arguments. First, they argue that Plaintiff's federal causes of action are untimely. Cnty. Mot. at 12–13; City Mot. at 1–2. Next, Defendants argue that Plaintiff fails to plausibly allege his *Monell* claim. Cnty. Mot. at 15–18; City Mot. at 3. County Defendants also argue that the malicious prosecution claims against Corbitt should be dismissed because she is entitled to absolute

5

immunity. Cnty. Mot. at 7–12. They also argue that sovereign immunity bars any claims against Corbitt in her official capacity. *Id.* at 14–15. Finally, County Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *Id.* at 18–19.

### A. Timeliness of Plaintiff's Federal Causes of Action

Defendants argue that Plaintiff's Section 1983 claims are untimely because he filed his Complaint a month after the statute of limitations expired. Cnty. Mot. at 13; City Mot. at 2.

"The statute of limitations for [Section] 1983 actions arising in New York is three years." *Lucente v. County of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020). "Only once the criminal proceeding has ended in the defendant's favor, or a resulting conviction has been invalidated . . . will the statute of limitations begin to run." *McDonough v. Smith*, 588 U.S. 109, 119–20 (2019); *see also Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) ("The statute of limitations begins to run when the prosecution terminates in the plaintiff's favor.") (cleaned up). "A 'favorable termination' does not occur until the prosecution against the plaintiff has 'conclusively' ended." *Id.* (citing *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995)).

Here, Plaintiff's Section 1983 claims are not time-barred. Plaintiff's claims did not accrue until March 23, 2021, the day the indictment and charges against him were dismissed and the prosecution against him conclusively ended. *See Spak*, 857 F.3d at 462 (internal quotations omitted). Plaintiff filed his Complaint on May 23, 2023, which is within the three-year statute of limitations.

Defendants argue that Plaintiff's claims accrued on April 23, 2020, the day the Appellate Division reversed Plaintiff's conviction and remitted the matter to Albany County Court. Indeed, Defendants rely on *Heck v. Humphrey* and argue that the reversal of a conviction constituted

such a favorable termination. 512 U.S. 477, 486–87 (1994) (A "plaintiff must prove that the conviction or sentence has been reversed on direct appeal.") However, this understanding of *Heck* is inconsistent with *McDonough*, which expanded *Heck*'s ambit to include ongoing prosecutions. 588 U.S. at 119 ("The principles and reasoning of *Heck* thus point toward a corollary result here: There is not a complete and present cause of action . . . to bring a [] challenge to criminal proceedings while those criminal proceedings are ongoing.") (cleaned up); *Smalls v. Collins*, 10 F.4th 117, 143 (2d Cir. 2021) ("*McDonough* simply extended *Heck*'s favorable termination requirement to ongoing prosecutions under circumstances that implicate *Heck*'s pragmatic concerns for finality and consistency."). Moreover, it is well-established in this Circuit that a "reversal of a conviction and remand for a new trial does not constitute" a favorable termination. *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996); *Stein v. County of Westchester*, 410 F. Supp. 2d 175, 179 (S.D.N.Y. 2006) ("Although [the] plaintiff's conviction was nominally 'reversed' on direct appeal, the Appellate Division in actuality merely 'vacated' the judgment and ordered a new trial on the same charges. . . . Critical to our decision is the unavoidable reality that the Appellate Division did not exonerate [the] plaintiff.").

Accordingly, since the charges were dropped within three years of filing the Complaint, these claims are not time-barred.

### B. *Monell* Liability

Defendants argue that Plaintiff failed to plausibly allege his *Monell* claim. Cnty. Mot. at 15–18; City Mot. at 3.

A plaintiff "who seek[s] to impose liability on local governments under [Section] 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691

(1973). "To establish municipal liability under [Section] 1983, a plaintiff must do more than simply state that a municipal policy or custom exists . . . Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). "[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). A complaint does not sufficiently allege the existence of a municipality custom or policy "if it tenders naked assertion[s] devoid of further factual enhancement." *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) (quoting *Iqbal*, 556 U.S. at 678).

Here, Plaintiff fails to plausibly allege the existence of a municipal policy. Rather, Plaintiff asserts in conclusory fashion that Defendants "followed a custom and policy of causing its employees to give false and misleading testimony at criminal trials." Compl. ¶ 89. Plaintiff does not state any specific policy or allege any other facts to support an inference that a custom or policy, beyond Defendants' conduct in this instant action, exists. *See id.* ¶¶ 88–89. This is insufficient to state a *Monell* claim. *See Santos*, 847 F. Supp. 2d at 576. The Court grants Defendants' motion to dismiss the *Monell* claim.

### C. Absolute Immunity

County Defendants contend that Plaintiff's malicious prosecution claim against Corbitt should be dismissed because she is entitled to absolute immunity from suit. Cnty. Mot. at 7.

A prosecutor is immune from civil suits under Section 1983 when "initiating a prosecution and [] presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings

8

are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citing *Burns v. Reed*, 500 U.S. 478, 494–96 (1991)). In these instances, "prosecutors receive only qualified immunity." *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) (quoting *Buckley*, 509 U.S. at 273). In determining whether a prosecutor's actions are afforded absolute immunity, the Supreme Court has applied a "functional approach . . . which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (cleaned up).

Here, Corbitt enjoys absolute immunity. Corbitt's portrayal of Plaintiff as a high-ranking gang member and purported use of Plaintiff's silence against him at his jury trial were all part of Corbitt's role in "presenting the State's case." *Imbler*, 424 U.S. at 431. Similarly, Corbitt's misrepresentations to the trial court about the contents of the video are part of her participation in judicial proceedings. *See Burns*, 500 U.S. at 490 (extending absolute immunity to prosecutors who make "false or defamatory statements in judicial proceedings"). Finally, Corbitt and the prosecutors who offered two witnesses lenient sentences in exchange for their fabricated testimony would also receive absolute immunity. *Buari v. City of New York*, 530 F. Supp. 3d 356, 380 (S.D.N.Y. 2021) (inducing a witness to implicate a plaintiff falsely is an activity where absolute immunity applies). Because Corbitt's advocacy before and during trial are "intimately associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430, she is entitled to absolute immunity.

Accordingly, the malicious prosecution claim against Corbitt is dismissed.

**D. Sovereign Immunity**

County Defendants also contend that sovereign immunity bars lawsuits against Corbitt in her official capacity. Cnty. Mot. at 14–15. It is well-settled that Congress did not abrogate states'

sovereign immunity through Section 1983. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that [a Section 1983] suit against the State . . . is barred by the Eleventh Amendment."). Further, New York has not waived its immunity from suit on the claims for monetary damages asserted in the Complaint. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Sovereign immunity bars not only suits against states themselves, but also suits for damages against state officials acting in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)). In her role as a district attorney prosecuting Plaintiff's case, Corbitt is a state official and thus entitled to sovereign immunity. Accordingly, all claims against Corbitt in her official capacity are dismissed with prejudice.[1]

### E. Supplemental Jurisdiction

County Defendants contend that "the Court should decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)." Cnty. Mot. at 18–19. However, because some of Plaintiff's federal claims may proceed, the Court will retain supplemental jurisdiction over Plaintiff's state law claims. *See, e.g.*, *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 453 (S.D.N.Y. 2014).

---

[1] In the Response, Plaintiff also requests leave to amend his Complaint to cure any deficiencies. Resp. at 19–20. However, under Local Rule 15.1(a), a "party moving to amend a pleading . . . must attach an undersigned copy of the proposed amended pleading to its motion papers." This "proposed amended pleading must be a complete pleading, which will supersede the pleading sought to be amended in all respects." L.R. 15.1(a). Plaintiff did not attach a proposed amended pleading to its Response. Accordingly, Plaintiff's motion to amend the Complaint is denied without prejudice.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the County Motion, Dkt. No. 40-1, is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that the City Motion, Dkt. No. 42-1, is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Plaintiff's *Monell* claim against Defendants is **DISMISSED without prejudice**; and it is further

**ORDERED**, that the malicious prosecution claim against Defendant Corbitt is **DISMISSED with prejudice**; and it is further

**ORDERED**, that all claims against Defendant Corbitt in her official capacity are **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   January 24, 2025
         Albany, New York

LAWRENCE E. KAHN
United States District Judge